```
USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#:
DATE FILED: JAN 1 6 2015
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

BEAUTYKO, LLC d/b/a BEAUTY
AMERICA,

          Plaintiff,

-against-

FEDEX GROUND PACKAGE SYSTEM,
INC., FEDEX SMARTPOST, INC., and
NOMORERACK.COM, INC.,

          Defendants.

No. 14-cv-0037 (RA)

OPINION AND ORDER

---

RONNIE ABRAMS, United States District Judge:

In this action for non-delivery of goods, Defendant Nomorerack.com, Inc. ("NMR") moves to dismiss and compel arbitration pursuant to an arbitration provision in a supplier agreement (the "Agreement") entered into between it and Plaintiff Beautyko, LLC d/b/a Beauty America ("Beautyko") on November 13, 2012. Despite the fact that Beautyko previously filed a demand for arbitration based on the same Agreement concerning the same subject matter at issue in this litigation, it now claims that the Agreement is invalid and unconscionable. For the reasons that follow, NMR's motion to compel arbitration is granted and Beautyko's claims against it are dismissed.

## BACKGROUND

### I. Procedural History

Beautyko, a wholesale company, first filed this action against three defendants—Federal Express Corporation, FedEx Ground Package System, Inc., and FedEx Corporation—in New York State court on November 13, 2013, alleging negligence and breach of contract in the shipment of

1

products from Beautyko's offices in New York to its customers. (Dkt. 1.) On January 2, 2014, all three Defendants properly removed the action to this Court.[1] (Dkt. 1.) On April 9, 2014, Beautyko filed an Amended Complaint naming two additional defendants: FedEx Smartpost, Inc. and NMR. (Dkt. 31 ("Am. Compl.").)

The Amended Complaint raises three contractual causes of action against NMR, all of which seek damages, and all of which appear to relate to NMR's purported violation of the Agreement: breach of contract, "for work, labor and services performed," and "for an action stated." (Am. Compl. 4–6.) NMR filed the instant motion to dismiss and compel arbitration of these three claims on June 9, 2014. (Dkt. 46 ("MTD").) Several months later, Beautyko stipulated to the dismissal—without prejudice—of Federal Express Corporation and FedEx Corporation, leaving only NMR, along with FedEx Ground Package System, Inc. and FedEx Smartpost, Inc., as defendants. (Dkt. 59.)

## II. The Agreement

NMR is an "online retailer that offers a variety of products to consumers at discount prices." (MTD 2.) Under its Agreement with Beautyko, NMR was to feature Beautyko's products for sale on its website for the five-month period from November 2012 to March 2013, with Beautyko essentially functioning as NMR's warehouse and shipper: NMR would purchase from Beautyko those products it wished to feature on its website, and if a customer on NMR's website

---

[1] Federal Express Corporation is a federally certified air carrier shipping goods in interstate commerce. (Dkt. 1.) Accordingly, this Court had federal question jurisdiction as to Beautyko's claims against Federal Express Corporation at the time of removal. See 28 U.S.C. § 1441(c); N. Am. Phillips Corp. v. Emery Air Freight Corp., 579 F.2d 229, 233-34 (2d Cir. 1978). Although Federal Express Corporation has now been dismissed from this action, the Court nevertheless chooses to exercise supplemental jurisdiction over the remaining claims and parties in the interest of judicial economy pursuant to 28 U.S.C. § 1367. See also Avalos v. IAC/Interactivecorp., No. 13-CV-8351, 2014 WL 5493242, at *6 n. 3 (S.D.N.Y. Oct. 30, 2014).

purchased the featured products, Beautyko would fulfill the orders by shipping them from Beautyko's offices in New York to the customer directly. (Id.)

The Agreement was signed by Avi Sivan, Managing Partner for Beautyko, on November 13, 2012. (Dkt. 47 Ex. A ("Agreement").) No one appears to have signed the Agreement on behalf of NMR, and NMR does not contend otherwise.

The terms of the Agreement govern the underlying dispute between the parties. Relevant here, however, is the Agreement's "Dispute Resolution" provision, which requires that, as "a condition precedent to any other legal recourse (unless such legal recourse seeks injunctive relief), the Parties shall make good faith efforts to come to resolution." (Agreement § 15(i).) The Agreement specifies the form these "good faith efforts" should take, and also includes an arbitration provision ("Arbitration Provision") as to any dispute the parties are unable to resolve:

> The parties shall submit any unresolved dispute to binding arbitration before the American Arbitration Association . . . with proceedings to take place in New York, N.Y., to be adjudicated in accordance with AAA's expedited procedures before a single arbitrator. In the event of arbitration, the Parties shall be responsible for their own legal fees and expenses, and the costs and expenses of the arbitrator and any fees charged by the AAA shall be apportioned equally between the Parties.

(Id.)

It is pursuant to this provision that NMR seeks to compel arbitration, and it is the validity, construction, and scope of this provision that is determinative of NMR's motion.

### III.   Conduct of the Parties Prior to Litigation

Both parties appear to have performed as required by the Agreement—at least initially. NMR submitted customer orders from its website to Beautyko for fulfillment, Beautyko alleges it properly fulfilled these orders (Sivan Aff. ¶ 4), and NMR claims it "routinely paid Beautyko's invoices in full in its normal course of business," (Schneider June 6, 2014 Aff. ("Schneider Aff.")

3

¶ 4). The present dispute arose only after NMR—concerned that Beautyko was submitting invoices for products that were either not timely shipped or properly delivered—withheld payment on Beautyko's invoices pursuant to Section 5 of the Agreement regarding payment terms and holdbacks. (Id. ¶¶ 4–5.)

To secure payment, Beautyko—consistent with the Arbitration Agreement—demanded arbitration before the American Arbitration Association, naming NMR as respondent and alleging breach of contract. (Dkt. 47 Ex. B.) NMR responded to Beautyko's demand on the merits, and did not contest the validity of the Agreement, its Arbitration Provision, or the arbitral proceeding itself. (Dkt. 47 Ex. C.) With its breach of contract claim still pending in arbitration, Beautyko filed the present action in New York State court. Beautyko readily acknowledges the curious split of its breach of contract claims across venues, noting that its claims in arbitration concern shipments for which Beautyko purportedly has "proof of delivery," while the claims removed to this Court concern shipments for which Beautyko was "unable to obtain verification of delivery." (Sivan Aff. ¶ 5.) Nowhere does Beautyko explain the legal significance of this distinction, arguing in its opposition papers only that the Arbitration Provision is invalid. (Pl.'s Opp. Mem. 3–6 )

## DISCUSSION

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, *et seq.*, "creates a body of federal substantive law establishing and governing the duty to honor agreements to arbitrate disputes." Crewe v. Rich Dad Educ., LLC, 884 F. Supp. 2d 60, 72 (S.D.N.Y. 2012). Where there is an agreement to arbitrate, the FAA "creates a presumption of arbitrability" such that any doubts as to the agreement's scope "should be resolved in favor of coverage." Paramedics Electromedicina Comercial, Ltda v. GE Med. Sys. Info. Techs, Inc., 369 F.3d 645, 653 (2d Cir. 2004) (internal citations omitted). Before addressing this issue of scope, however, courts must resolve the "the

threshold [issue] of whether the parties entered into a binding agreement to arbitrate at all." Glencore Ltd. v. Degussa Engineered Carbons L.P., 848 F. Supp. 2d 410, 421 (S.D.N.Y. 2012). In resolving this threshold question, courts are directed to look to state contract law. See Applied Energetics, Inc. v. NewOak Capital Mkts, LLC, 645 F.3d 522, 526 (2d Cir. 2011).[2]

Complicating the question of the Arbitration Provision's validity is the fact that no one signed the Agreement on behalf of NMR. New York courts have long held, however, that a valid arbitration agreement only requires proof that the parties intended to be bound by such an agreement. See Crawford v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 319 N.E.2d 408, 412–13 (N.Y. 1974). Indeed, even if the Agreement had not been signed by *either* party, the Court could still find that a valid arbitration agreement exists. See Nat'l City Golf Fin. v. Higher Ground Country Club Mgmt. Co., LLC, 641 F. Supp. 2d 196, 203 (S.D.N.Y. 2009); Highland HC, LLC v. Scott, 978 N.Y.S.2d 302, 306 (N.Y. App. Div. 2014); Race Co. v. Oxford Hall Contracting Corp., 268 N.Y.S.2d 175, 176 (N.Y. App. Div. 1966). New York's arbitration statute requires only a written agreement—not a signed, written agreement. N.Y. C.P.L.R. 7501. Furthermore, because the Agreement could be performed within one year, it does not fall within New York's statute of frauds such that the signature of the party "to be charged therewith" would be required. N.Y. Gen. Oblig. Law § 5-701.

In opposing NMR's motion, Beautyko concedes that it signed the contract in question and that it "assumed that a valid agreement existed." (Pl.'s Opp. Mem. 3–4.) Beautyko nonetheless argues that, because NMR did not sign the contract, there is no objective evidence that it intended to be bound by it. (Id.) The intent of the parties to be bound by the Agreement is so clear, however,

---

[2] There is no dispute that New York law applies to this question. Not only must the Court apply New York's substantive law in determining the validity of the Arbitration Provision, see Applied Energetics, Inc., 645 F.3d at 526, but the Agreement itself specifies that it is to be construed "in accordance with the internal laws of the State of New York." (Agreement § 15(h).)

as to render Beautyko's opposition meritless. Not only did both parties act pursuant to the Agreement—NMR by submitting orders to Beautyko, and Beautyko by purportedly fulfilling these orders—but, prior to bringing this action, Beautyko submitted nearly identical claims to arbitration pursuant to the very same Arbitration Provision. (Dkt. 47 Ex. B.)[3] Indeed, by asserting nearly identical claims in arbitration, Beautyko may have waived its right to pursue its action against NMR in court altogether, and although neither party has raised this argument, New York courts routinely find waiver in analogous, but far less egregious circumstances. See N.Y. C.P.L.R. 7503(b) (barring parties from seeking a stay of arbitral proceedings where they "participated" in those proceedings); Stone v. Noble Const. Mgmt., Inc., 983 N.Y.S.2d 417, 418 (N.Y. App. Div. 2014).

In any event, that both parties initially performed under the Agreement, that Beautyko submitted the dispute to arbitration, and that NMR raised no objections to the validity of the Agreement and sought to participate in arbitration consistent with Section 15(i) of the Agreement clearly establishes that both parties intended to be bound by the Arbitration Provision. See God's Battalion of Prayer Pentecostal Church, Inc. v. Miele Assocs., LLP, 845 N.E.2d 1265, 1267 (N.Y. 2006) (finding an intent to be bound where both parties operated under the terms of their contract and plaintiff's claim for breach relied on "the very agreement that contain[ed] the arbitration clause it [sought] to disclaim."). Accordingly, the Arbitration Provision is valid and must be enforced according to its clear terms.

Beautyko's contention that the entire Agreement—including the Arbitration Provision therein—is unconscionable must also fail. (Pl.'s Opp. Mem. 5–6.) First, whether the underlying agreement is unconscionable is a matter for arbitration—and not for the courts. See Tsadilas v.

---

[3] The Court takes judicial notice of these simultaneous proceedings.

Providian Nat. Bank, 786 N.Y.S.2d 478, 480 (N.Y. App. Div. 2004). Furthermore, because this agreement was negotiated between two, sophisticated commercial parties, there is a strong presumption against unconscionability. See Chrysler Credit Corp. v. Kosal, 518 N.Y.S.2d 162, 164 (N.Y. App. Div. 1987). Even if the terms of the contract were inequitable, as Beautyko argues, the Agreement's termination provision allowed either party to terminate at will with 10 days' notice. (Agreement § 9.) Thus, if the question of unconscionability was before this Court, there is nothing about the contract that appears to violate public policy, nor anything that shocks the conscience. Indeed, the record indicates nothing other than a "fair and equitable bargaining position between these parties at the time of execution." Lagarenne v. Ingber, 710 N.Y.S.2d 425, 428 (N.Y. App. Div. 2000). The fact that Beautyko itself relied on the Agreement when it submitted largely identical claims to arbitration only bolsters this conclusion.

Finally, in an affirmation in opposition to NMR's motion, Beautyko's counsel claims that he had no knowledge of the pending arbitral proceedings. (Carasso Aff. ¶ 22.) That is of no moment. If anything, this lack of knowledge evidences bad faith by his client, and leaves unanswered the question why he—and Beautyko—continued to oppose NMR's motion despite a clear warning from the Court that they could face sanctions. (Dkt. 57.) The statements by Beautyko's Managing Partner that "[k]eeping NMR in this action would clearly assist in the settlement of this action" and that although the "Agreement does state in general that the parties shall submit disputes to arbitration . . . this case should not proceed to arbitration, because it makes sense to resolve the dispute in the same proceeding as FedEx" only evidences Beautyko's true intention in opposing the instant motion. (Sivan Aff. ¶¶ 8, 14.) Such conduct flouts a valid agreement between the parties, wastes the resources of both NMR and this Court, and amounts to impermissible gamesmanship.

As the Agreement is valid, the Court must now address the issue of its scope. In this case, that question is a relatively easy one: the plain text of the Arbitration Provision provides that "any unresolved dispute"—aside from those in which injunctive relief is sought—is to be submitted to "binding arbitration before the American Arbitration Association" after the parties have made "good faith efforts to come to resolution" on their own. (Agreement § 15(i).) Because the Arbitration is so broadly worded, arbitrability is presumed. See Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc., 252 F.3d 218, 224–25 (2d Cir. 2001) (noting that "very expansive language will generally suggest a broad arbitration clause," and that broad arbitration clauses enjoy a "presumption of arbitrability" (internal quotations omitted)).

Beautyko nevertheless argues that, because it could amend its pleadings to seek injunctive relief, thus placing its claims beyond the scope of the Arbitration Provision, the Arbitration Provision is ambiguous and unenforceable. (Pl.'s Opp. Mem. 6–7.) Plaintiff, however, has not sought injunctive relief, and can only amend its pleadings at this stage of the action with leave of the Court, which this Court would decline to grant if sought. Fed. R. Civ. P. 15(a). Even if Beautyko were to amend its complaint to seek injunctive relief, such amendment would not render the scope of the arbitration provision ambiguous. Claims for damages would go to arbitration, while any claims for injunctive relief could properly be litigated. See Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 221 (1985) (explaining that the FAA "*requires* piecemeal resolution when necessary to give effect to an arbitration agreement" (emphasis in original) (internal quotations omitted)). In any event, any ambiguity in the precise scope of the Arbitration Provision should be resolved in favor of arbitration. See Paramedics Electromedicina Comercial, Ltda, 369 F.3d at 653. Thus, Beautyko's claims against NMR, all of which seek damages, fall within the clear scope of the Arbitration Provision.

Because the Arbitration Provision is valid, and because Beautyko's claims fall within its clear scope, NMR's motion to compel arbitration is granted. Beautyko's claims against NMR are also hereby dismissed from this action, leaving only those claims against FedEx Ground Package System, Inc. and FedEx Smartpost, Inc. See Isaacs v. OCE Bus. Servs., Inc., 968 F. Supp. 2d 564, 572 (S.D.N.Y. 2013).

## CONCLUSION

For the reasons stated above, NMR's motion to dismiss and compel arbitration of Beautyko's claims is hereby granted. The Clerk of the Court is respectfully requested to close the motion pending at docket entry 46.

Pursuant to Fed. R. Civ. P. 11(c)(3), and in light of the Court's numerous warnings, including its Order of September 3, 2014 (Dkt. 57), Plaintiff and its counsel are hereby:

ORDERED to show cause why monetary sanctions in the form of attorney fees and costs should not be imposed pursuant to Fed. R. Civ. P. 11(b)(1) and 11(b)(2).

SO ORDERED.

Dated:   January 16, 2015
         New York, New York

_____
Ronnie Abrams
United States District Judge